UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

JUSTIN SWINEA,
Plaintiff,

v.

CVS PHARMACY, INC.,
Defendant.

Case No. ___________

COMPLAINT
JURY TRIAL DEMANDED

**Defendant:**
CVS Pharmacy, Inc.
1520 20th Ave SW
Minot, ND 58701

**Place of Employment:**
CVS Pharmacy, Inc.
1520 20th Ave SW
Minot, ND 58701

Plaintiff Justin Swinea, appearing pro se, brings this civil action against Defendant CVS Pharmacy, Inc. and alleges as follows:

# I. JURISDICTION AND VENUE

1. This action arises under federal law, including Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.
2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.
3. This Court has jurisdiction over Plaintiff's ADA claims under 42 U.S.C. § 12117.
4. This Court has jurisdiction over Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5.
5. Venue is proper in this District because the employment events giving rise to this action occurred in North Dakota.

## II. PARTIES

6. Plaintiff Justin Swinea is an individual who was employed by Defendant CVS Pharmacy, Inc. in North Dakota.
7. Defendant CVS Pharmacy, Inc. is an employer covered by the ADA and Title VII.
8. At all relevant times, Defendant employed Plaintiff as a manager in training.

## III. FACTUAL ALLEGATIONS

9. In approximately October 2024, CVS hired Plaintiff as a manager in training. Plaintiff was hired by District Manager Ben.
10. On Plaintiff's first day, Plaintiff met Alison, who told Plaintiff that she would train him to become a store manager. Alison also told Plaintiff that she would be absent for approximately one or two weeks because of injuries involving her back and that she would train Plaintiff when she returned.
11. On Plaintiff's second day, Plaintiff met Tony, an operations manager who was supposed to train Plaintiff on how to close the store. Tony repeatedly refused to properly train Plaintiff and instead left Plaintiff on the register and told Plaintiff to figure things out himself.
12. Alison and Tony did not provide Plaintiff with his own sign-in or PIN to clock in and out of work. Alison instead had Plaintiff sign in using her information and gave Plaintiff her CVS store card to use with the kiosk while assisting customers.
13. Because Plaintiff did not have his own sign-in or PIN, Plaintiff repeatedly had to ask Tony to sign him into the register. When Plaintiff was logged out while assisting customers, Tony would scold Plaintiff, call him "stupid" and "dumb," and threaten not to sign Plaintiff back into the register if he became locked out again.
14. On one occasion, Plaintiff was locked out of the register while customers were waiting. Tony initially refused to assist Plaintiff despite Plaintiff repeatedly asking for help. Tony eventually came to the register, slammed a clipboard on the counter, called Plaintiff "dumb" in front of customers, and signed Plaintiff back into the register.
15. The following day, Tony saw Plaintiff sitting while working. Plaintiff was sitting because he had a back injury and was experiencing significant pain, and Plaintiff's back condition and pain were known in the workplace.
16. Tony called Plaintiff "lazy" and used a vulgar sexual insult toward Plaintiff before snatching a machine from Plaintiff's hands. Another employee witnessed the conduct, agreed with Tony's behavior, and encouraged it.
17. Plaintiff reported Tony's conduct to Alison by text message, but Alison did not respond.
18. Tony continued calling Plaintiff "dumb" and refusing to provide the training Plaintiff was supposed to receive. During another shift, Tony left Plaintiff alone in the store for approximately four hours to operate the store without adequate training or access to the

register. Because Plaintiff did not have the required register credentials, customers had to use the kiosk.

19. Plaintiff attempted to contact Alison about the situation, but she did not respond. Plaintiff then contacted District Manager Ben, who contacted Tony and caused Tony to return to the store.
20. Plaintiff informed Ben about Tony's conduct. Ben did not take effective corrective action regarding Tony's behavior and instead attempted to attribute Tony's behavior to Plaintiff's alleged job performance.
21. Ben also told Plaintiff that a customer had written a negative report about Plaintiff. Plaintiff informed Ben that Plaintiff believed the report had actually been written by an employee pretending to be a customer. Ben disregarded Plaintiff's explanation and told Plaintiff to stay away from Tony.
22. Later that evening, Tony told Plaintiff that Ben had instructed him to close the store early. Tony nevertheless continued refusing to train Plaintiff on how to close the store. Tony told Plaintiff that he could leave early, and Plaintiff left the store.
23. The next morning, Plaintiff discovered that Tony had written on the work schedule that Plaintiff had left two hours early, left an office door unlocked with a register inside, left the front door unlocked, and failed to return to the store. Plaintiff alleges that these statements were false because Tony had instructed Plaintiff to leave early.
24. Plaintiff confronted Tony and asked whether Tony had written the statements. Tony admitted that he had written them. When Plaintiff told Tony to stop making false statements about him, Tony told Plaintiff to "shut up" and snatched the clipboard from Plaintiff in front of customers.
25. Plaintiff believed Tony's conduct was threatening and contacted the police. The police instructed Tony to leave the store, and Tony left. Ben later instructed Tony to return to the store and told Plaintiff that he had instructed Tony to stay away from Plaintiff.
26. Plaintiff informed Ben that he believed he was being treated unfairly because of his disability and race. Ben told Plaintiff that he could file a report with Human Resources, and Plaintiff did so.
27. Human Resources did not provide Plaintiff with a meaningful response. Plaintiff subsequently informed Alison, Ben, and Human Resources on multiple occasions about the discriminatory and harassing treatment he was experiencing.
28. Plaintiff also informed Ben that Alison had been expected to train him but had not been present at the store. Ben initially stated that he did not know Alison was on leave. Plaintiff told Ben that Alison had told Plaintiff she was on a leave of absence, and Ben told Plaintiff that Alison would return the following day to train him.
29. When Alison returned, she called Plaintiff into an office with the pharmacy manager present. Alison questioned Plaintiff about his work activities, including the amount of time Plaintiff spent sitting.

30. Plaintiff explained that he was sitting because of his back condition and that Alison had previously permitted him to sit because of his disability. Alison then told Plaintiff that he needed to obtain a formal work accommodation and that he could not continue sitting until he did so.
31. Plaintiff alleges that CVS therefore knew of his physical impairment and knew that his need to sit was related to his disability.
32. During the same meeting, Alison accused Plaintiff of having work hours that did not correspond with the hours shown on CVS's records. Plaintiff explained that CVS had failed to provide him with his own clock-in information for approximately a week and a half and that Alison had previously told him that she was keeping track of his work hours.
33. Plaintiff explained that he had recorded his hours as accurately as he could based upon the information available to him. Plaintiff further explained that the inaccurate records resulted from CVS's failure to provide him with the necessary means to clock in and out and from the instructions he had received concerning his hours. Plaintiff did not intentionally falsify his work hours.
34. Because of his back pain and the working conditions, Plaintiff informed CVS that he needed to take a leave of absence.
35. Plaintiff repeatedly attempted to obtain the appropriate leave-of-absence paperwork. Each month, Plaintiff requested that CVS provide the appropriate paperwork for his physician to complete.
36. CVS repeatedly provided Plaintiff with paperwork that Plaintiff was told was the wrong form. Plaintiff had his physician complete the forms multiple times, but CVS continued to tell Plaintiff that the paperwork was incorrect and that CVS would provide the correct form.
37. Plaintiff alleges that CVS repeatedly failed to provide the appropriate paperwork needed for his leave of absence despite his repeated requests.
38. While Plaintiff was on leave, Human Resources contacted Plaintiff regarding his work hours. Plaintiff explained that CVS had failed to provide him with the proper means to record his hours and that he had followed the instructions he had received.
39. Plaintiff informed Human Resources that he believed the investigation into his work hours was retaliation for his disability and discrimination complaints. Plaintiff further explained that CVS had not previously contacted him about his time records despite knowing that he did not have a personal clock-in number.
40. Plaintiff also explained that he believed CVS was using the time records to accuse him of improperly recording work time after he had complained about disability discrimination.
41. In approximately June 2025, after his leave of absence, Plaintiff was living in North Carolina after relocating from North Dakota and attempted to transfer to another CVS location.

42. District Manager Ben initially told Plaintiff that he would transfer Plaintiff to another store. Ben then stopped responding to Plaintiff for approximately three weeks.
43. During the fourth week, Ben contacted Plaintiff and terminated Plaintiff's employment while Plaintiff was in North Carolina attempting to transfer to another CVS location.
44. Plaintiff was not given a disciplinary write-up immediately before his termination. Plaintiff alleges that his termination was related to the discriminatory treatment, disability-related complaints, accommodation issues, and retaliation described above.
45. As a result of the termination and loss of employment, Plaintiff suffered financial hardship, lost his housing, and became homeless for approximately one year.

## IV. COUNT I — DISABILITY DISCRIMINATION UNDER THE ADA

46. Plaintiff incorporates paragraphs 1 through 45.
47. Plaintiff had a physical impairment affecting his back.
48. CVS knew about Plaintiff's back condition and knew that Plaintiff needed to sit because of his condition.
49. Plaintiff was able to perform his employment duties, including with reasonable accommodation.
50. Plaintiff's need to sit when experiencing back pain was related to his disability and was permitted by Alison before CVS required Plaintiff to pursue a formal accommodation.
51. CVS subsequently told Plaintiff that he could not continue sitting until he obtained a formal work accommodation.
52. CVS also failed to provide Plaintiff with the appropriate leave paperwork despite Plaintiff repeatedly requesting the correct forms.
53. Plaintiff complained to CVS management and Human Resources about disability-related treatment.
54. CVS thereafter scrutinized Plaintiff's work hours and treated his time records as suspicious even though CVS had failed to provide Plaintiff with his own clock-in credentials.
55. CVS subsequently terminated Plaintiff's employment.
56. Plaintiff alleges that CVS discriminated against him because of his disability and failed to provide reasonable accommodation in violation of the ADA, including 42 U.S.C. § 12112.

## V. COUNT II — RETALIATION UNDER THE ADA

57. Plaintiff incorporates paragraphs 1 through 56.

58. Plaintiff complained to CVS management and Human Resources about disability-related treatment and informed management that he believed he was being treated unfairly because of his disability.
59. Plaintiff requested leave because of his back condition and attempted to obtain disability-related accommodation and appropriate leave paperwork.
60. After Plaintiff engaged in these protected activities, CVS questioned Plaintiff regarding his work hours and treated the records as evidence of possible wrongdoing even though Plaintiff had previously explained the circumstances concerning his time records.
61. Plaintiff informed Human Resources that he believed these actions were retaliation for his disability complaints.
62. CVS subsequently terminated Plaintiff's employment.
63. Plaintiff alleges that the timing and circumstances of the investigation into his work hours and his termination support an inference that CVS retaliated against him for exercising rights protected by the ADA, in violation of 42 U.S.C. § 12203.

# VI. COUNT III — DISABILITY-BASED HARASSMENT / HOSTILE WORK ENVIRONMENT

64. Plaintiff incorporates paragraphs 1 through 63.
65. Plaintiff was subjected to repeated unwelcome verbal, humiliating, and degrading conduct in the workplace.
66. Tony repeatedly called Plaintiff "dumb" and used degrading and sexually vulgar language toward Plaintiff.
67. Tony publicly humiliated Plaintiff in front of customers, slammed a clipboard on the counter during an interaction with Plaintiff, snatched equipment from Plaintiff, and left Plaintiff alone to operate the store without adequate training or access to the register.
68. Some of this conduct occurred after Tony observed Plaintiff sitting because of his back pain.
69. Plaintiff complained about the conduct to Alison, Ben, and Human Resources.
70. CVS did not take effective corrective action in response to Plaintiff's complaints.
71. Plaintiff alleges that the harassment was related, at least in part, to his disability and physical limitations and that the cumulative conduct interfered with the terms and conditions of his employment.
72. Plaintiff pleads this claim in the alternative to the extent that federal law recognizes a disability-based hostile-work-environment or harassment claim under the ADA.

# VII. COUNT IV — RACE DISCRIMINATION UNDER TITLE VII

73. Plaintiff incorporates paragraphs 1 through 72.
74. Plaintiff is African American.
75. Plaintiff informed District Manager Ben that he believed he was being treated unfairly because of his race and disability.
76. Plaintiff experienced degrading and humiliating treatment in the workplace and alleges that CVS failed to adequately respond to his complaints.
77. Plaintiff alleges that his race was a motivating factor in the treatment he received and in the adverse employment actions taken against him.
78. Plaintiff alleges that CVS discriminated against him because of his race in violation of Title VII, 42 U.S.C. § 2000e-2(a).

# VIII. COUNT V — RETALIATION UNDER TITLE VII

79. Plaintiff incorporates paragraphs 1 through 78.
80. Plaintiff complained to CVS management about discriminatory treatment, including treatment based upon his race.
81. Plaintiff made these complaints to District Manager Ben and Human Resources.
82. CVS was therefore aware that Plaintiff was opposing conduct that he believed to be discriminatory.
83. After Plaintiff made complaints concerning discrimination, CVS scrutinized his time records and questioned him concerning alleged discrepancies.
84. Plaintiff informed Human Resources that he believed these actions were retaliatory.
85. CVS later terminated Plaintiff's employment.
86. Plaintiff alleges that his termination and related adverse treatment were motivated, at least in part, by his protected complaints, in violation of Title VII, 42 U.S.C. § 2000e-3(a).

# IX. DAMAGES

87. As a direct and proximate result of Defendant's conduct, Plaintiff suffered economic and non-economic damages.
88. Plaintiff lost his employment, wages, and employment benefits.
89. Plaintiff suffered emotional distress, humiliation, and damage to his dignity.
90. Plaintiff suffered significant financial hardship following the loss of his employment.
91. Plaintiff ultimately lost his housing and experienced homelessness for approximately one year.
92. Plaintiff seeks all damages and other relief available under the applicable federal statutes.

# X. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor and against Defendant;

B. Declare that Defendant violated Plaintiff's rights under the ADA and Title VII;

C. Award Plaintiff back pay and lost wages;

D. Award Plaintiff lost employment benefits;

E. Award compensatory damages to the extent permitted by law;

F. Award punitive damages to the extent permitted by law;

G. Award Plaintiff appropriate equitable relief;

H. Award Plaintiff costs and any attorney's fees available under applicable law;

I. Grant such other and further relief as the Court determines to be just and proper; and

J. Grant a trial by jury on all issues for which a jury trial is available.

## XI. JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which a jury trial is available.

Respectfully submitted,

/s/ Justin Swinea

Justin Swinea
Plaintiff, Pro Se

Address: 2106 Clifton ave.

City, State, ZIP: Baltimore, MD, 21217

Telephone: (518) 410 - 4597

Email: jswinea11@gmail.com